IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHELLE F. on behalf of I.M.U., a minor,

                Plaintiff,

    v.                             Civil Action No.
                                 5:21-CV-0350 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP          MELISSA DELGUERCIO, ESQ.
250 South Clinton St., Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, New York 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      DANIEL S. TARABELLI, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

---

[1]     This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that her minor daughter, I.M.U., ("claimant"), was not disabled at the relevant times and, accordingly, is ineligible for the supplemental security income ("SSI") benefits for which plaintiff applied on the claimant's behalf. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.   BACKGROUND

Claimant was born in November of 2005, and is currently sixteen years of age. She was eight years old at the date her alleged disability began and twelve years old at the time of her mother's application for benefits on her behalf. Claimant measured approximately five feet and two inches at the time her application was filed and weighed approximately one hundred and seventy-six pounds. Claimant resides with her mother, her younger sister, and her mother's boyfriend.

Claimant was in the sixth grade at the time that her mother applied for benefits, and in eighth grade at the time of the administrative hearing held to address her claim. She attends regular classes, although her

mother testified at the hearing that she was in the process of trying to obtain a Section 504 plan to provide the claimant with accommodations at school related to her impairments.

Plaintiff alleges that claimant suffers from a cyclic vomiting disorder with concurrent dizziness and tiredness, as well as anxiety. During the relevant period, claimant has been treated for these conditions by professionals at St. Joseph's Hospital Health Center, Oswego Hospital Primary Care, Upstate Golisano Children's Hospital, ARISE Child and Family Services, and Upstate Gastroenterology. At the time of the administrative hearing, plaintiff reported that claimant took nortriptyline for her cyclic vomiting disorder and was seeing a therapist at her school to address her anxiety.

Plaintiff reported during the administrative hearing held to address her claim for benefits on claimant's behalf that her daughter becomes dizzy two or three times per week, typically toward the middle of the day, which causes her to vomit. Those episodes occur randomly and are not associated with certain foods, but happen more frequently in the warmer months, or when the claimant is more active or anxious. The claimant will typically sleep when she has a vomiting episode, but will often have to wake up to vomit more. She experiences anxiety in addition to her

gastrointestinal symptoms.  Her vomiting caused her to miss many days of school during the previous school year (2018-2019), but she has been absent only a few days during the current school year (2019-2020) because the more recent episodes have been occurring after the close of the school day.  Plaintiff reports that claimant is a good student, but her learning has been affected by missing days and her lack of confidence, such that she is struggling in a few subjects.  She further reports that her daughter's impairments and symptoms affect her whole life, cause issues with her hygiene, prevent her from making plans with friends, and cause her to be agitated or irritable at times.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for Child SSI payments under Title XVI of the Social Security Act on April 6, 2018.  In support of that application, she alleged a disability onset date of June 1, 2014, and asserted that claimant is disabled based on a cyclic vomiting disorder, dizziness, tiredness, and anxiety.

A hearing was conducted on March 11, 2020, by administrative law judge ("ALJ") Laura Bernasconi, to address plaintiff's application.  Following that hearing, ALJ Bernasconi issued an unfavorable decision on April 10, 2020.  That opinion became a final determination of the agency on January

28, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

      B.    <u>The ALJ's Decision</u>

      In her decision, ALJ Bernasconi applied the familiar three-step evaluation procedure for assessing whether a child claimant meets the standard for disability under the regulations.  At step one, she found that claimant had not engaged in substantial gainful activity during the relevant time period.  At step two, ALJ Bernasconi found that claimant suffers from severe impairments that impose more than minimal limitations on her functional abilities, including cyclic vomiting syndrome, gastroesophageal reflux disorder ("GERD"), and anxiety.  The ALJ also considered claimant's obesity but found that it did not impose any limitations on her functioning, and additionally concluded that scattered notations of posttraumatic stress disorder ("PTSD") did not constitute a separate medically determinable impairment apart from her anxiety.

      At step three, ALJ Bernasconi examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that the claimant's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the regulations, specifically

considering Listings 105.00 and 112.06.  ALJ Bernasconi went on to find that claimant's impairments do not functionally equal any of the childhood listings, determining that she has less than marked limitations in the domains of interacting and relating with others and health and physical wellbeing, and no limitations in the other domains of functioning.

Based upon these findings, ALJ Bernasconi concluded that claimant is not disabled.

C.    This Action

Plaintiff commenced this action on March 27, 2020.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred in failing to provide any legally sufficient rationale to support her finding regarding the subjective reports of the claimant and her mother related to the intensity, persistence and limiting effects of her symptoms.  Dkt. No. 14.

Oral argument was conducted in this matter, by telephone, on September 22, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A court's review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

   B.   Disability Determination: The Childhood Disability Evaluation
        Process

       An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has not engaged in substantial gainful activity and has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(C)(i); *see Hudson v. Astrue*, 1:06-CV-1342, 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's

disability benefits).

The agency has developed a three-step protocol to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).  The first step of the test requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then by statute and by regulation, the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1.  *Id.*  Equivalence to a listing can be either

9

medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment.  Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1). Those domains include (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established with the finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is

an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

C.    <u>Analysis</u>

In this appeal, plaintiff does not appear to directly challenge the ALJ's assessment of whether she meets or equals a childhood listing, but rather focuses on the ALJ's assessment of the subjective reports related to the intensity, persistence and limiting effect of the claimant's symptoms. Specifically, plaintiff argues that the ALJ failed to provide any other

11

explanation for her finding as to this issue other than to state that those reports "are not entirely consistent with the medical evidence and other evidence in the record."  Dkt. No. 14, at 6-9.  Plaintiff asserts that this error is harmful because the claimant has reported that she becomes sick or dizzy multiple times per week, and that, as such, her reports are consistent with an opinion indicating that the claimant is absent frequently and has marked limitations in the domains of acquiring and using information and attending and completing tasks.  *Id*.  I find these arguments to be unpersuasive.

Under the two-step review protocol applicable in social security cases for assessing a claimant's subjective reports of symptoms, an ALJ must first determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, and, if so, the ALJ must then evaluate the intensity and persistence of those symptoms and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8.  When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must

evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors. *Id.*

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss

certain factors did not require remand because the ALJ provided specific

reasons for his determination "and the record evidence permits us to glean

the rationale of the ALJ's decision").  Where the ALJ's findings are

supported by substantial evidence, the decision to discount subjective

testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of*

*Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

 In her decision, the ALJ acknowledged testimony that claimant

becomes sick or dizzy two or three times per week toward the middle or

end of the school day, causing her to vomit and also resulting in anxiety

and nervousness, but that, according to the plaintiff, this has not caused

many absences from school during the current school year.  Administrative

Transcript ("AT") at 14.[3]  She also noted plaintiff's reports that claimant's

symptoms affect her life at school, socially, and at home, that they cause

her to be irritated and agitated, and that she is taking medication and

attending therapy to address her impairments.  AT 14-15.  The ALJ

concluded that, although the claimant's medically determinable

impairments could reasonably be expected to cause the alleged symptoms,

the allegations regarding the intensity, persistence and limiting effects of

---

[3]    The administrative transcript is found at Dkt No. 11, and will be referred to
throughout this decision as "AT __."

those symptoms "are not entirely consistent with the medical evidence and other evidence in the record."  AT 15.  She then discussed the treatment evidence related to the claimant's impairments, including that she underwent various diagnostic procedures related to her vomiting and GERD that revealed few or no abnormalities, that the claimant reported exacerbation of her cyclic vomiting when exposed to hot weather or anxiety, and that she was taking hydroxyzine for a period of time, which reportedly helped.  AT 15.  The ALJ acknowledged that the claimant was prescribed a number of medications during the relevant period, including nortriptyline, periactin, Miralax, and omeprazole, and that, in December of 2019, the claimant reported a decrease in her vomiting symptoms over the past few months, which she noted "suggest[s] improvement in her physical and mental condition with treatment."  AT 15-16.

Contrary to plaintiff's argument, the ALJ did not merely state that the subjective reports were not entirely consistent with the evidence in the record without providing any elaboration of that finding or assessing any of the relevant factors in the regulations.  As was discussed above, the ALJ discussed the type of treatment claimant underwent, including diagnostic testing and medications.  She explicitly indicated that the record showed that claimant's cyclic vomiting symptoms had decreased in the last quarter

of 2019 with treatment through medication and therapy.   AT 290.  She

discussed that the claimant's gastrointestinal providers were not able to

find any obvious physical cause of her cyclic vomiting syndrome and

accordingly referred her to a psychiatrist and/or neurologist for further work-

up.  She also discussed the reported frequency of the symptoms to the

extent documented by the record and identified potential triggers for those

symptoms, such as hot weather and anxiety.  The ALJ therefore

considered many of the relevant factors outlined in the regulations, and her

discussion shows how she found this evidence was inconsistent with the

allegations of greater disability.

Apart from the fact that the ALJ clearly did consider many of the

relevant factors related to the assessment of subjective reports, plaintiff has

also not provided any concrete argument that a more fulsome analysis of

the subjective reports would have altered the outcome here.  Indeed, the

only report that plaintiff points to is the testimony that claimant becomes

sick or dizzy "multiple times per week."  Dkt. No. 14, at 9.  However, I note

that the actual testimony indicated that these spells occurred specifically

two or three times per week, often during the middle of the day.  AT 33-34.

At an appointment with her gastroenterologist in November of 2019, it was

reported that the claimant's vomiting happened only once per week, for a

period of three or four hours, and that such episodes improve with sleep. AT 282.  It is therefore not clear how, even if the ALJ accepted the reports that claimant vomits once or twice per week, such reports would be suggestive of the requisite level of impairment in any of the relevant domains of functioning.  Although there are allegations that the claimant experiences anxiety along with her physical issues, there is very little documented treatment for anxiety and the evidence that is available shows that combined treatment for her impairments with medication and therapy has helped to lessen the frequency of her symptoms.  Additionally, although not specifically discussed by the ALJ, it was noted in a treatment record from December of 2018 that the claimant was "able to control her vomiting" when she avoided exertional activity such as gym class, but that the vomiting episodes began to recur when she started playing sports again at school.  AT 276.  This evidence suggests that the claimant's symptoms were not as random and uncontrolled as she alleged, and that they could be mitigated or reduced to some extent through avoidance of such types of physical activity in addition to her treatment.

As plaintiff observes, the record contains a statement dated March 3, 2020, from individuals who appear to be various school personnel that the

ALJ did not acknowledge or address in her decision.[4]  AT 211-17.  In this statement, the authors opined that claimant has a number of "serious" and "obvious" problems in her functioning within the domain of acquiring and using information, and a few such problems in the domain of attending and completing tasks, but otherwise has no observable limitations in the other domains.  *Id.*  However, any failure of the ALJ to assess this opinion is not error meriting remand.  Notably, the applicable regulations in this case specify that "[w]e are not required to articulate how we considered evidence from nonmedical sources using the [factors and requirements that apply to medical opinions and prior administrative medical findings]."  416.920c(d).  Given that there is no indication that those sources were medical sources, there was therefore no requirement for the ALJ to explain how she considered this statement.  Nor do I find credible plaintiff's argument that the ALJ would have been required to find claimant disabled based on this statement had she properly assessed the subjective reports.  Firstly, even if this statement had been accepted, I am not convinced that it necessarily substantiates either an extreme limitation in one domain or marked

---

[4]     The form does not list the positions or titles of the four individuals who signed it, and it is ambiguous in that it is titled "Teacher/School Questionnaire" and ends with spaces for signatures of "all teachers, school psychologists/counselors, etc. who complete this form . . . ."  Although not critical, I infer from the fact that the form identifies four subjects and states that the four persons saw the claimant daily for forty minute classes that they were the claimant's teachers.

limitations in two domains. *Cf. Christina B. v. Comm'r of Soc. Sec.*, 19-CV-1192, 2020 WL 5848732, at *7-8 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.) (finding that a teacher opinion indicating an obvious problem in the majority of the areas in a domain was not necessarily contradictory to the ALJ's finding that the claimant has a less-than-marked limitation in that domain, particularly when considering it in conjunction with all of the evidence in the record); *Perkins ex rel. J.P. v. Astrue*, 32 F. Supp. 3d 334, 342-43 (N.D.N.Y. 2012) (Bianchini, M.J.) (finding an overall marked limitation in a domain where a teacher found a number of "very serious" areas of limitation and indicated the claimant took an extremely long time to complete tasks even with help, that she never turned in homework assignments, and that she required a great deal of support in the classroom).  I note, moreover, that, based on the explanations provided by those school personnel in the form, there is no apparent connection made between the opined limitations and either claimant's vomiting or anxiety, other than to note that absences related to her cyclic vomiting "leads to gaps in learning."  AT 211-16.  Lastly, the form is contrary to every other opinion in the record, including a previous statement from claimant's sixth grade teacher, as well as plaintiff's subjective reports that the claimant does not have many issues with completing homework or classwork other

than as caused by her self-esteem and missing classes; however, plaintiff reported that the claimant had not missed many days during the relevant current school year.  AT 50-51, 157-65, 252, 258.  Simply put, even crediting the subjective allegations and adopting the above opinion would not have resulted in any reasonable change in the outcome of this case, as neither of those things nor the rest of the evidence of record undermine the ALJ's finding that claimant fails to meet or functionally equal one of the childhood listings.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge of the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 15) is GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is DENIED, the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      September 27, 2022
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge